**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**


JASON RINEHART,                               )
                                              )

                **Plaintiff,**          )
                                              )     **CIVIL ACTION**

**v.**                                    )
                                              )     **No. 12-2793-JWL**

**CAROLYN W. COLVIN,[1]**         )
**Acting Commissioner of Social Security,**  )
                                              )

                **Defendant.**       )
_____ )


## MEMORANDUM AND ORDER


Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying Social Security Disability (SSD) benefits under sections 216(i) and 223 of the Social Security Act. 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding no error, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the decision.

## I.      Background

Plaintiff applied for SSD, alleging disability beginning March 22, 2009. (R. 37, 166-68). In due course, Plaintiff exhausted proceedings before the Commissioner, and

---

[1]On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Colvin is substituted for Commissioner Michael J. Astrue as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

now seeks judicial review of the final decision denying benefits. He alleges the Administrative Law Judge (ALJ) erred in failing to find him disabled in accordance with Listing 11.04 at step three of the Commissioner's five-step sequential evaluation process; in failing to accord "controlling weight" or at least the greatest weight to the opinions of Dr. Lehman and Dr. Berger pursuant to the treating physician rule; in failing to provide good reasons to find Mr. Rinehart's allegations of symptoms not credible; and in failing to include limitations corresponding to moderate difficulties in concentration, persistence, and pace within the hypothetical question presented to the vocational expert.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord,

Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC). 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the

economy.  <u>Wilson</u>, 602 F.3d at 1139 (quoting <u>Lax</u>, 489 F.3d at 1084).  In steps one

through four the burden is on Plaintiff to prove a disability that prevents performance of

past relevant work.  <u>Blea v. Barnhart</u>, 466 F.3d 903, 907 (10th Cir. 2006); <u>accord</u>,

<u>Dikeman v. Halter</u>, 245 F.3d 1182, 1184 (10th Cir. 2001); <u>Williams</u>, 844 F.2d at 751 n.2.

At step five, the burden shifts to the Commissioner to show that there are jobs in the

economy which are within the RFC assessed.  <u>Id.</u>; <u>Haddock v. Apfel</u>, 196 F.3d 1084,

1088 (10th Cir. 1999).

The court finds no error in the decision below.  It addresses each allegation of error

presented in Plaintiff's Social Security Brief and finds that Plaintiff has not shown error.

Because the analysis of the error alleged in weighing the medical opinions pursuant to the

treating physician rule might affect the analysis regarding Listing 11.04, the court begins

by considering the ALJ's application of the treating physician rule.

## II.     Applying the Treating Physician Rule

Plaintiff claims the ALJ erroneously accorded "great weight" to the non-examining

source opinion of Dr. Goren, while according "no weight" to the treating source opinions

of Dr. Lehman and Dr. Berger, and failed to give good reasons for rejecting the opinions

of Dr. Lehman and Dr. Berger.  (Pl. Br. 15).  He argues that the opinions of Dr. Lehman

should have been accorded "controlling weight" because they are supported by "clinical

and diagnostic objective evidence and are uncontradicted by other substantial evidence."

<u>Id.</u> at 16.  He argues that even if one assumes it was proper to deny "controlling weight"

to Dr. Lehman's opinion, the ALJ erred "by failing to continue on to the second step [in

evaluating treating source opinions which] requires weighing the medical opinions under the factors in 20 C.F.R. § 404.1527(c)(2)-(6)." Id. He explains how in his view the record evidence supports the opinions of Dr. Lehman and Dr. Berger but will not support the ALJ's determination to accord "no weight" to those opinions. (Pl Br. 16-19). The Commissioner argues that the ALJ properly weighed the treating source opinions and found them worthy of no weight, and that the record evidence supports that finding. She argues that once the ALJ properly discounted the treating source opinions it was proper to rely on the opinion of the ME and accord that opinion great weight.

## A. Legal Standard: The Treating Physician Rule

A physician or psychologist who has treated a patient frequently over an extended period of time (a treating source)[2] is expected to have greater insight into the patient's medical condition, and his opinion is generally entitled to "particular weight." Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003). And, "the opinion of an examining physician [(a nontreating source)] who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion." Id. at 763 (citing

---

[2]The regulations define three types of "acceptable medical sources:"

"Treating source:" an "acceptable medical source" who has provided the claimant with medical treatment or evaluation in an ongoing treatment relationship. 20 C.F.R. §§ 404.1502, 416.902.

"Nontreating source:" an "acceptable medical source" who has examined the claimant, but never had a treatment relationship. Id.

"Nonexamining source:" an "acceptable medical source" who has not examined the claimant, but provides a medical opinion. Id.

Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995)).  But, opinions of nontreating sources are generally given more weight than the opinions of nonexamining sources who have merely reviewed the medical record.  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004); Talbot v. Heckler, 814 F.2d 1456, 1463 (10th Cir. 1987) (citing Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983), Whitney v. Schweiker, 695 F.2d 784, 789 (7th Cir. 1982), and Wier ex rel. Wier v. Heckler, 734 F.2d 955, 963 (3d Cir. 1984)).

"If [the Commissioner] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) [(1)] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and [(2)] is not inconsistent with the other substantial evidence in [claimant's] case record, [the Commissioner] will give it controlling weight."  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); see also, Social Security Ruling (SSR) 96-2p, West's Soc. Sec. Reporting Serv., Rulings 111-15 (Supp. 2010) ("Giving Controlling Weight to Treating Source Medical Opinions").

The Tenth Circuit has explained the nature of the inquiry regarding a treating source's medical opinion.  Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003) (citing SSR 96-2p).  The ALJ first determines "whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'"  Id. at 1300 (quoting SSR 96-2p).  If the opinion is well-supported, the ALJ must confirm that the opinion is also consistent with the other substantial evidence in the record.  Id.  "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight."  Id.

A treating source opinion which is not entitled to controlling weight is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927."  Watkins, 350 F.3d at 1300.  Moreover, unless a treating source opinion is given controlling weight, all medical opinions will be evaluated by the Commissioner in accordance with the regulatory factors.  Id.; SSR 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2013).

Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  Watkins, 350 F.3d at 1301; 20 C.F.R. §§ 404.1527(d)(2-6), 416.927(d)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).  However, the court will not insist on a factor-by-factor analysis so long as the "ALJ's decision [is] 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting Watkins, 350 F.3d at 1300).  After considering the regulatory factors, the ALJ must give good reasons in his decision for the weight he ultimately assigns the

medical opinions.  If the ALJ rejects a treating source opinion completely, he must give

specific, legitimate reasons for doing so.  Watkins, 350 F.3d at 1301.

### B. The ALJ's Determination

In assessing RFC, the ALJ summarized the medical records, including the records

of Dr. Lehman and Dr. Berger.  (R. 42-43).  He also summarized the medical opinions,

accorded weight to each opinion, and explained the bases for the weight accorded.

He accorded "no weight" to the opinions of Dr. Lehman and Dr. Berger

(1) because they are not well-supported by medically acceptable clinical and laboratory

diagnostic techniques; (2) because they are inconsistent with other substantial record

evidence; (3) because they relate to administrative findings reserved to the Commissioner;

(4) because the most common observation in the medical evidence has been that

Plaintiff's physical, sensory, neurological, and motor examinations are within normal

limits; (5) because diagnostic imaging and physical examinations do not support the

degree of limitation opined; (6) because treatment notes indicate Plaintiff's symptoms

responded well to medication; and (7) because there is no indication that Dr. Lehman or

Dr. Berger have any specialized understanding of the evidentiary requirements of Social

Security disability programs.  (R. 44-45).

In addition to the reasons applicable to both physicians as discussed above, the

ALJ also found that Dr. Lehman (1) has no mental health expertise, (2) his opinions are

conclusory statements of disability, (3) he only treated Plaintiff every three months,

which Dr. Goren stated was an inappropriate frequency for treating allegedly disabling

neurological impairments, and (4) the "marked" limitations in reaching, handling, and fingering to which Dr. Lehman opined are inconsistent with Plaintiff's ability even to feed himself. (R. 44-45). He found that (1) although Dr. Berger is a specialist in physical medicine and rehabilitation, he has no expertise in neurology or mental health; (2) his "opinions are quite conclusory;" and (3) his opinions are belied by medical evidence that shows Plaintiff's condition is stable with only minor or moderate deficits. (R. 44-45).

On the other hand, the ALJ explained that he accorded "great weight" to Dr. Goren's opinion. (R. 45). He stated that he did so because Dr. Goren performed a thorough review of the record, because his opinion is consistent with the totality of the medical record, because Dr. Goren has specialized understanding of the Social Security disability program, and because he is a specialist, trained in neurology. Id.

### C. Analysis

Plaintiff's argument that the ALJ failed to give good reasons for rejecting the treating source opinions is belied by the decision. As noted above, the ALJ stated seven reasons to discount both physicians' opinions, four additional reasons to discount Dr. Lehman's opinion, and three additional reasons to discount Dr. Berger's opinion.

Contrary to Plaintiff's argument, the ALJ also properly determined not to accord "controlling weight" to the treating source's opinions. As noted above, a treating source opinion may not be accorded "controlling weight" if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques, or if it is inconsistent with other substantial evidence in the record. Watkins, 350 F.3d at 1300. SSR 96-2p, cited by the

9

court in Watkins, explains that the term "substantial evidence" as used in determining

whether a treating source opinion is worthy of "controlling weight" is given the same

meaning as determined by the Court in Richardson v. Perales, 402 U.S. 389 (1971). SSR

96-2, West's Soc. Sec. Reporting Serv., Rulings 113 (Supp. 2013). Therefore, the

threshold for denying controlling weight is low. The ALJ need only find evidence which

is "such relevant evidence as a reasonable mind would accept as adequate to support a

conclusion that is contrary to the conclusion expressed in the [treating source's] medical

opinion." SSR 96-2, West's Soc. Sec. Reporting Serv., Rulings 113 (Supp. 2013).

Here, as the ALJ explained, Dr. Goren's medical opinion is record evidence which

is contrary to or inconsistent with the opinions of both Dr. Lehman and Dr. Berger. Dr.

Goren is a medical expert with expertise in neurology and in the Social Security disability

programs. As such, his opinion is relevant evidence which a reasonable mind might

accept to support a conclusion which is contrary to the conclusions reached by Dr.

Lehman or Dr. Berger. Therefore, it was proper for the ALJ to decline to afford

"controlling weight" to the treating source opinions.

Plaintiff's argument that the ALJ failed to weigh the opinions in accordance with

the regulatory factors, must also fail. The ALJ stated that he had "considered opinion

evidence in accordance with the requirements of 20 CFR 404.1527." (R. 41). Moreover,

he explained the standard for evaluating medical opinions, and specifically cited the

regulations listing the factors that the analysis must be based upon once it is determined

that a treating source opinion is unworthy of "controlling weight." (R. 44) (citing 20

C.F.R. §§ 404.1527(d), 416.927(d)). Finally, the multitude of reasons given, both for discounting the opinions of Dr. Lehman and Dr. Berger, and for accepting the opinion of Dr. Goren, reflect that the ALJ applied the regulatory factors even though he did not provide a factor-by-factor analysis. More is not required. <u>Oldham</u>, 509 F.3d at 1258 (court will not insist on a factor-by-factor analysis if the decision reveals the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight).

Plaintiff argues that it was improper for the ALJ to discount Dr. Lehman's opinion on the basis that it was on an issue reserved to the Commissioner, because Dr. Lehman did not state merely that Plaintiff was disabled, but he provided his opinion regarding specific functional limitations in Plaintiff's abilities. (Pl. Br. 17-18) (citing <u>Kauser v. Astrue</u>, 638 F.3d 1324, 1332 (10th Cir. 2011)). The court finds no error here. This is so primarily because Dr. Lehman provided one of his opinions in a "To Whom It May Concern" letter in which he stated, "it is not possible for [Plaintiff] to work in any capacity at this time." (R. 940). Certainly this is an opinion regarding disability which is not also an opinion regarding specific functional limitations in Plaintiff's abilities. And, it is an opinion on an issue reserved to the Commissioner. It is appropriate to discount Dr. Lehman's opinion, in part, on that basis.

Moreover, the court finds that <u>Kauser</u> is not controlling here because the "red herring" portion of that opinion cited by Plaintiff was admittedly not necessary to that decision, and as such it is merely dicta. In <u>Kauser</u>, the court found the ALJ's determination (that the treating physician's opinion was unworthy of controlling weight)

was likely erroneous.  <u>Kauser</u>, 638 F.3d at 1331.  Nevertheless, the court went on to note that the ALJ's "decision not to give controlling weight to Dr. Lambert's opinion is not our primary concern with the analysis here," because the court found the evaluation of "Dr. Lambert's opinion [was] patently inadequate."  <u>Id.</u>  It found that after the ALJ determined not to accord controlling weight to Dr. Lambert's opinion, he did not continue the analysis as required by <u>Watkins</u>--to explain the weight, if any, accorded the opinion, or to provide his reasons for assigning weight or rejecting the treating source opinion altogether.  <u>Id.</u>  The <u>Kauser</u> court concluded that it "must remand because we cannot meaningfully review the ALJ's determination absent findings explaining the weight assigned to the treating physician's opinion."  <u>Id.</u>

At that point, the case was decided and remand was determined.  Nevertheless, the court continued its discussion and noted a "prominent red herring in the ALJ's discussion," which, "while not dispositive," <u>id.</u>, "should be identified so that it plays no role in subsequent proceedings."  <u>Id.</u> at 1332.  The court identified the red herring as the ALJ's statement that Dr. Lambert's opinion was not a medical issue but an administrative finding reserved to the Commissioner.  <u>Id.</u>  The court explained that Dr. Lambert's opinion was not an opinion on RFC but was specific work-related functional limitations.  <u>Id.</u>  Everything after the court's determination that remand was necessary is mere dicta, unnecessary to that decision.  And, the court acknowledged that its discussion of the "red herring" was not dispositive.  Therefore, the statement in <u>Kauser</u> is not binding on this court.  Moreover, this case is readily distinguishable from the facts in <u>Kauser</u>, in that Dr.

Lehman's opinion in this case includes the opinion that Plaintiff is disabled, which is an opinion on an issue reserved to the Commissioner.

Next, Plaintiff argues that there is no inconsistency between the fact that Plaintiff can feed himself and Dr. Lehman's opinion that Plaintiff was markedly limited (defined as "effectively precluded") in grasping, turning, and twisting objects; in using fingers/hands for fine manipulations; and in using arms for reaching. (Pl. Br. 18). He explains that in his view this is so, because although Plaintiff is "effectively precluded" from performing these activities in a work environment, that "does not mean that he did not have the minimal capacity to use his hands and arms to feed himself." Id.

Plaintiff does not explain how one might have the minimal capacity to feed himself if he is effectively precluded from reaching, grasping, turning, twisting, or fine manipulation. Not only are the "effectively precluded" abilities inconsistent with the alleged ability of Plaintiff to feed himself, to the court they seem necessarily preclusive of that ability. Nonetheless, even if one might properly understand the "effectively precluded" activities to permit Plaintiff to feed himself in some minimal way, the court may not find error in the ALJ's contrary finding. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Lax v.

<u>Astrue</u>, 489 F.3d 1080, 1084 (10th Cir. 2007) (citations, quotations, and bracket omitted); see also, <u>Consolo v. Fed. Maritime Comm'n</u>, 383 U.S. 607, 620 (1966) (same).

Plaintiff's remaining arguments regarding medical opinions seek to have the court reweigh the evidence and substitute its judgment for that of the ALJ. It is precluded from doing so. <u>Bowman</u>, 511 F.3d at 1272; <u>accord</u>, <u>Hackett</u>, 395 F.3d at 1172. The ALJ articulated eleven reasons to discount Dr. Lehman's opinion, ten reasons to discount Dr. Berger's opinion, and four reasons to accord "great weight" to Dr. Goren's opinion. Even if the court were to find error in one or two of the reasons given, it would find that the balance of the ALJ's analysis is supported by substantial evidence in the record, and would affirm the evaluation of the medical opinions on that basis.

## III.    Listing 11.04

Plaintiff claims the ALJ erroneously failed to "indicate whether any consideration was given to Medical Listing 11.04." (Pl. Br. 12). He argues that Plaintiff has "a significant disturbance of functioning in his left upper extremity impacting gross and dextrous movements and a significant disturbance of his lower extremities impacting his gait," <u>id.</u> at 13, and that remand is necessary to evaluate whether his condition meets Listing 11.04. (Pl. Br. 14). He argues that the alleged error cannot be considered harmless in the circumstances. <u>Id.</u> The Commissioner argues that Plaintiff's condition does not meet Listing 11.04. (Comm'r Br. 4-7). She argues that contrary to Plaintiff's assertion, the ALJ in fact addressed Listing 11.04, pointing out that the medical expert (ME), Dr. Goren, testified at the hearing that Plaintiff does not have significant

disorganization of motor function as required by the listing, and arguing that the record evidence supports the ALJ's implicit agreement with Dr. Goren's opinion. Id. at 4-6. Plaintiff argues in his Reply Brief that Dr. Goren's testimony was not addressed within the ALJ's step three analysis and is merely the Commissioner's post hoc rationalization which cannot be relied upon to affirm the decision. (Reply 2). He also argues that in order for the court to rely upon the Commissioner's argument that the record evidence supports the ALJ finding it would have to usurp the role of the Commissioner to weigh the evidence and would have to cherry-pick evidence that is favorable to the decision while ignoring evidence supporting a finding of disability. Id. at 2-3.

## A.     Legal Standard for Evaluating Step Three and Listing 11.04

The Commissioner has provided a "Listing of Impairments" which describes certain impairments that she considers disabling. 20 C.F.R. §§ 404.1525(a), 416.925(a) (2011); see also, Pt. 404, Subpt. P, App. 1 (Listing of Impairments). If plaintiff's condition meets or equals the severity of a listed impairment, that impairment is conclusively presumed disabling. Williams, 844 F.2d at 751; see also, Bowen v. Yuckert, 482 U.S. 137, 141 (1987) (if claimant's impairment "meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled"). However, plaintiff "has the burden at step three of demonstrating, through medical evidence, that his impairments 'meet all of the specified medical criteria' contained in a particular listing." Riddle v. Halter, No. 00-7043, 2001 WL 282344 at *1 (10th Cir. Mar. 22, 2001) (quoting Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis in Zebley)). "An impairment that

manifests only some of [the listing] criteria, no matter how severely, does not qualify" to meet or equal the listing. Zebley, 493 U.S. at 530.

"The [Commissioner] explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard. The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just 'substantial gainful activity.'" Zebley, 493 U.S. at 532-33 (emphasis in original) (citing 20 C.F.R. § 416.925(a) (1989)). The listings "streamlin[e] the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." Yuckert, 482 U.S. at 153. "Because the Listings, if met, operate to cut off further detailed inquiry, they should not be read expansively." Caviness v. Apfel, 4 F. Supp. 2d 813, 818 (S.D. Ind. 1998).

Listing 11.04 provides:

11.04 *Central nervous system vascular accident.* With one of the following more than 3 months post-vascular accident:

A. Sensory or motor aphasia resulting in ineffective speech or communication; or

B. Significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station (see 11.00C).

20 C.F.R., Pt. 404, Subpt. P, App. 1 § 11.04.

In turn, section 11.00C as cross-referenced in Listing 11.04B provides:

C. *Persistent disorganization of motor function* in the form of paresis or paralysis, tremor or other involuntary movements, ataxia and sensory disturbances (any or all of which may be due to cerebral cerebellar, brain stem, spinal cord, or peripheral nerve dysfunction) which occur singly or in various combination, frequently provides the sole or partial basis for decision in cases of neurological impairment. The assessment of impairment depends on the degree of interference with locomotion and/or interference with the use of fingers, hands, and arms.

20 C.F.R., Pt. 404, Subpt. P, App. 1 § 11.00C.

## B. The ALJ's Determinaiton

The ALJ found the "claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." (R. 40). He explained:

The claimant does not allege, the record does not demonstrate, and no treating, examining or reviewing physician or psychologist of record has opined that the claimant has any impairments, either singularly or in combination, that meet or medically equal the criteria contained in the Listing of Impairments. The claimant has the burden of proof at this step in the sequential evaluation process and, accordingly, has not met it.

(R. 40).

In explaining his RFC assessment, the ALJ summarized Dr. Goren's testimony, noting that the ME testified that Listing 11.04 was not met or equaled, and that there is no evidence of significant disorganization of motor function. (R. 42). The ALJ noted Dr. Goren's opinion that Plaintiff "experienced very significant medical difficulties in mid-2009," but that he improved considerably and was capable of performing work activity.

Id. He accorded "great weight" to Dr. Goren's opinion and explained his bases for doing so, id. at 45, and as noted above, this finding is supported by substantial evidence.

## C. Analysis

Plaintiff's argument that the ALJ did not indicate whether he gave any consideration to Listing 11.04 is without merit. To be sure, when he discussed step three in his decision the ALJ did not state that he had considered Listing 11.04. There, he found merely that Plaintiff had not met his burden at step three to demonstrate that his condition meets or equals the severity of a listing. Plaintiff does not contest this finding.

Plaintiff argues that the ALJ stated at step three that he had considered Listings 12.02, 12.04, and 12.06, and thereby Plaintiff implies that it was also necessary for the ALJ to state that he had considered Listing 11.04. The ALJ's step three finding--that Plaintiff did not meet his burden--is not dependent upon his discussion of the Listings. And, the step three finding is not dependent in any respect upon the discussion of mental Listings 12.02, 12.04, or 12.06. Rather, the discussion of mental impairments in the step three analysis is responsive to the ALJ's regulatory duty to follow a special technique when evaluating the severity of mental impairments, and to state those findings and conclusions in the decision. 20 C.F.R. §§ 404.1520a(a),(e)(2), 416.920a(a),(e)(2). There is no similar regulatory duty with regard to Listing 11.04. Plaintiff can show no error in failing to discuss Listing 11.04 within the step three analysis.

Further, as the Commissioner notes, in his discussion of the RFC assessment the ALJ relied on Dr. Goren's testimony that Plaintiff's condition does not meet or equal

Listing 11.04 and that there is no evidence Plaintiff has the significant disorganization of motor function required by the listing. (R. 42). Plaintiff argues to the contrary, that the evidence demonstrates "Mr. Rinehart had a significant disturbance of functioning in his left upper extremity impacting gross and dextrous movements and a significant disturbance of his lower extremities impacting his gait." (Pl. Br. 13). Plaintiff is correct that the record contains evidence of symptoms impacting gross and dextrous movements and gait, but Plaintiff's argument misses the point of the criteria of Listing 11.04.

As Plaintiff quotes, Listing 11.04B requires: "Significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station (see 11.00C)." 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 11.04B. However, that Listing contains a cross-reference to 11.00C and that reference must be given effect in deciding whether the Listing is met. Section 11.00C explains that paresis or paralysis, tremor or other involuntary movements, ataxia and sensory disturbances may cause persistent disorganization of motor function and that these symptoms "frequently provide[] the . . . basis for decision in cases of neurological impairment." Id. § 11.00C. It then explains that "[t]he assessment of impairment depends on the <u>degree</u> of interference with locomotion and/or interference with the use of fingers, hands, and arms." Id. (emphasis added).

Here, Dr. Goren opined that the degree of interference with locomotion or with the use of fingers, hands, and arms was insufficient to meet the criteria of Listing 11.04, and the ALJ accorded Dr. Goren's opinion "great weight." The court's finding above that

there was no error in according "no weight" to the opinions of Drs. Lehman and Berger, and "great weight" to the opinion of Dr. Goren compels the further finding that the ALJ was correct to find that Plaintiff's condition does not meet or medically equal the severity of Listing 11.04. A "significant <u>disturbance</u> of functioning" <u>impacting</u> the use of fingers, hands, and arms or <u>impacting</u> gait, as suggested in Plaintiff's Brief is simply inadequate to demonstrate the "significant and persistent <u>disorganization</u> of motor function" required by §11.00C to show the degree of interference necessary to meet or medically equal the criteria of Listing 11.04.

Plaintiff's argument in his Reply Brief that the ALJ did not discuss his findings with regard to Listing 11.04 within his step three discussion, and that, therefore the Commissioner's arguments with regard to them is merely <u>post-hoc</u> rationalization upon which the court may not rely is without merit. First, Plaintiff's argument elevates form over substance. Regardless of the fact that the ALJ did not discuss Listing 11.04 in his step three discussion, he did discuss that Listing, and accepted Dr. Goren's opinion with regard to it. Where that discussion occurred in the decision is irrelevant to its particular significance. Additionally, Plaintiff did not allege before the ALJ that his condition meets or equals Listing 11.04. Based, in part, upon that fact, the ALJ determined that Plaintiff did not meet his burden of proof at step three. (R. 40) ("The claimant does not allege, . . ."). In these circumstances, there was no evident need to discuss Listing 11.04 at step three of the decision. Since Plaintiff did not argue before the ALJ that the Listing is met or equaled, it would be anomalous indeed to allow Plaintiff to change his approach,

20

argue before this court that his condition meets or equals Listing 11.04, and thereby procure a finding that it was error to fail to discuss that Listing within the step three analysis. The ALJ discussed Listing 11.04 in the decision at issue and it is not <u>post-hoc</u> rationalization for the Commissioner to make an argument in that regard on appeal. The court finds no error in the ALJ's consideration of Listing 11.04.

## IV. Credibility Determination

Plaintiff claims the ALJ erred in his credibility determination because he "failed to provide good reasons for finding Mr. Rinehart not credible." (Pl. Br. 21). Plaintiff argues that because the ALJ erred in weighing the medical opinions and in evaluating Listing 11.04, he "appears not to have been cognizant of many of the abnormalities in the record that show persistent disturbances of motor functioning and abnormal imaging of the brain." <u>Id.</u> He implies that the ALJ found Plaintiff not credible merely because the medical evidence alone does not substantiate the degree of limitation alleged by Plaintiff. <u>Id.</u> at 21-22. He argues that the ALJ's use of daily activities to discount the credibility of his allegations does not demonstrate that he is able to perform a full-time job. <u>Id.</u> at 22.

The court's review of an ALJ's credibility determination is deferential. It is generally treated as binding on review. <u>Talley v. Sullivan</u>, 908 F.2d 585, 587 (10th Cir. 1990); <u>Broadbent v. Harris</u>, 698 F.2d 407, 413 (10th Cir. 1983). "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence. <u>Wilson</u>, 602 F.3d at 1144; <u>accord</u> <u>Hackett</u>, 395 F.3d at 1173.

Therefore, in reviewing the ALJ's credibility determinations, the court will usually defer to the ALJ on matters involving witness credibility. Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994); but see Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993) ("deference is not an absolute rule"). "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" Wilson, 602 F.3d at 1144 (quoting Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)); Hackett, 395 F.3d at 1173 (same).

The ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effect of his symptoms are not credible. (R. 41-42). According that finding the deference it is due, the court finds no error in the ALJ's credibility determination. The ALJ discounted the credibility of Plaintiff's allegations of symptoms because the objective clinical and diagnostic evidence does not support the allegations and because Plaintiff's condition improved considerably after mid-2009. (R. 42). He also noted that Plaintiff had not initially alleged a mental impairment and that he had not sought or received therapy for his alleged mental symptoms. (R. 43). Finally, he noted that Plaintiff's daily activities are inconsistent with disability, and that Plaintiff has alleged no adverse side effects from medications. Id.

Plaintiff's allegation of error in the credibility determination misapprehends and ignores the ALJ's findings with regard to credibility. As the court's summary above reveals, the ALJ provided five reasons for discounting the credibility of Plaintiff's allegations despite Plaintiff's allegation that the ALJ failed to provide reasons. Although

the ALJ noted that the medical evidence does not support Plaintiff's allegations of disabling symptoms, that was not the only reason given; he provided four additional reasons to discount Plaintiff's credibility. Plaintiff's argument that the ALJ was not cognizant of the record evidence in light of his errors in weighing the medical opinions and in failing to discuss Listing 11.04 must fail because the court found that the ALJ did not err in the respect alleged by Plaintiff.

Finally, Plaintiff's daily activities, while not alone the determinative factor, when considered in conjunction with the other bases to discount Plaintiff's credibility, support the ALJ's credibility determination. The ALJ's consideration of daily activities was but one of five reasons given to discount the credibility of Plaintiff's allegations. Moreover, he relied to a great extent upon third party reports tending to show that Plaintiff's daily activities included activities more extensive, and suggesting greater mental abilities, than those reported by Plaintiff. (R. 43).

Plaintiff's arguments, that his extensive testimony showed greater limitations than recognized by the ALJ, and that the ALJ misconstrued and mischaracterized that testimony, amount to no more than an invitation to the court to reweigh that testimony and the evidence regarding credibility. The court may not do so. Bowman, 511 F.3d at 1272; accord, Hackett, 395 F.3d at 1172.

## V.    Flawed Vocational Expert Testimony

Plaintiff correctly stated the legal standard for hypothetical questioning of the vocational expert:

An ALJ's hypothetical question to a Vocational Expert "must include all (and only) those impairments borne out by the evidentiary record." <u>Evans v. Chater</u>, 55 F.3d 530, 532 (10th Cir. 1995). Hypothetical questions should be crafted carefully to reflect a claimant's residual functional capacity because "[t]estimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the [Commissioner's] decision." <u>Hargis v. Sullivan</u>, 945 F.2d 1482, 1492 (10th Cir. 1991).

(Pl. Br. 23).

To the extent Plaintiff argues that the ALJ's hypothetical questioning was erroneous based upon the alleged errors discussed above, the court found no errors and that argument must fail. However, Plaintiff also argues that the hypothetical question presented to the vocational expert (VE) did not include all mental limitations that the ALJ ascribed to Plaintiff. (Pl. Br. 23-24). Plaintiff asserts that the hypothetical question limited Plaintiff to understanding, remembering, and carrying out only simple instructions but that the ALJ also found that Plaintiff has moderate difficulties with concentration, persistence, or pace. (Pl. Br. 23). He argues that an ALJ is "not permitted to translate limitations found in the [four] broad areas of mental functioning used in 20 C.F.R. § 404.1520a (e.g. concentration, persistence, and pace) into different mental restrictions that do not accurately describe the limitations found when presenting a hypothetical to the VE." <u>Id.</u> (citing <u>Ramirez v. Barnhart</u>, 372 F.3d 546. 554 (3d Cir. 2004); <u>Winschel v. Comm'r of Soc. Sec.</u>, 631 F.3d 1176, 1181 (11th Cir. 2011); <u>Steward v. Astrue</u>, 561 F.3d 679, 684-85 (7th Cir. 2009); <u>Newton v. Chater</u>, 92 F.3d 688, 695 (8th Cir. 1996)).

Plaintiff's argument ignores the totality of the ALJ's hypothetical question as it relates to mental limitations, and beyond the fact that none of the cases cited by Plaintiff are binding on this court, the cases do not stand for the proposition urged by Plaintiff. With regard to mental limitations, the ALJ's hypothetical stated, "This person is able to understand, remember and carry out simple instructions, this person should avoid production quotas, assembly line, and piece rates." (R. 83). Plaintiff's need to avoid production quotas, assembly line, and piece rates is missing from his recitation of the hypothetical question. At least one Circuit Court has held that a restriction against jobs with quotas adequately addresses the mental limitations resulting from difficulties with concentration. Smith v. Halter, 307 F.3d 377, 379-80 (6th Cir. 2001). The fact that the ALJ in this case restricted Plaintiff from jobs with quotas in addition to those jobs requiring only the ability to understand, remember, and carry out simple instructions distinguishes this case from each case cited in Plaintiff's Brief.

Each of the cases cited by Plaintiff holds that a restriction to simple, unskilled work will not account for the ALJ's finding at step two that a claimant has "often" or "moderate" limitations in concentration, persistence, and pace. See, Ramirez, 372 F.3d at 554 (simple, one or two step tasks do not account for "often" deficiencies in concentration, persistence, and pace); Winschel, 631 F.3d at 1180-81 ("moderate" limitation in concentration, persistence, and pace does not equate to ability to perform simple, routine tasks, or unskilled work); Steward, 561 F.3d at 684-85 (limitations in concentration, persistence, and pace not accounted for by limitation to simple work);

Newton, 92 F.3d at 695 ("moderate" deficiencies in concentration, persistence, and pace not adequately accounted for by limitation to simple work).

None of those cases holds that an ALJ is not permitted in his RFC assessment to translate limitations found in the [four] broad areas of mental functioning used in 20 C.F.R. § 404.1520a (e.g. concentration, persistence, and pace) into mental restrictions. In fact, that is precisely what the ALJ is required to do. In SSR 96-8p, the Commissioner has clarified the difference between evaluating the severity of mental limitations at steps two and three based upon the four broad mental functional areas identified in the psychiatric review technique and assessing mental RFC. SSR 96-8p, West's Soc. Sec. Reporting Serv., Rulings 147 (Supp. 2013). "The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in" the four mental functional areas. Id. RFC must be expressed in terms of specific work-related functions. Id. at 148. "Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." Id. at 149. Therefore, an ALJ should not state a mental RFC in terms of the four broad mental functional areas, but should make a function-by-function assessment of each of the work-related mental activities relevant to the case at hand. Plaintiff has shown no error in the hypothetical presented to the vocational expert.

Because Plaintiff has shown no error in the decision at issue here, the court finds that it must be affirmed.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Dated this 13th day of May 2014, at Kansas City, Kansas.


s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**